STATE of Tennessee, Appellant,

v.

David S. MORELOCK, Appellee.

Court of Criminal Appeals of Tennessee,
at Nashville.

Sept. 11, 1992.

Permission to Appeal Denied by
Supreme Court Jan. 25, 1993.

Jeff K. Walker, Springfield, for appellee.

Charles W. Burson, Atty. Gen., and C. Mark Fowler, Asst. Atty. Gen., Nashville, Patrick H. McCutchen, Dist. Atty. Gen., and Dent Morriss, Asst. Dist. Atty. Gen., Springfield, for appellant.

OPINION

BIRCH, Judge.

Pursuant to Rule 3(c), Tenn.R.App.P., the State of Tennessee appeals the judgment of the Circuit Court of Robertson County finding unconstitutional the warrantless search of a car driven by David S. Morelock, the defendant, and ordering that the large quantity of marijuana seized as a result thereof be suppressed as evidence. The judgment must be affirmed.

I

The record of the suppression hearing establishes that Mark Norrod, a state trooper, observed a car speeding north on Interstate 65 at about 3 a.m. At the time, Norrod was travelling in the opposite direction; he turned around, pursued, and stopped the car.

Morelock was the sole occupant. Norrod requested his driver's license, but Morelock was unable to show one. Norrod learned, nevertheless, that Morelock's Georgia license was valid, and that he was not a fugitive. Norrod then prepared two citations, one for exceeding the speed limit and the other for failing to exhibit a valid driver's license.

Although their business had ended, Norrod continued to detain Morelock and press his investigation. He asked Morelock for permission to search the passenger compartment of the car; Morelock concedes, on appeal, that he consented. Even so, Norrod failed to find any evidence that would incriminate Morelock.

Norrod persisted, and the following conversation occurred:

NORROD: You are not carrying any drugs or weapons in the car are you?

MORELOCK: No, sir.

NORROD: You mind if I look in the car?

MORELOCK: Well, no it don't make any difference.

NORROD: You do not mind if I look in?

MORELOCK: I got Christmas presents and stuff like that ...

NORROD: OK, have you got your keys and everything?

MORELOCK: Yeh, they're in there.

NORROD: Your keys are in the car?

MORELOCK: Yeh, uh huh (indicating yes by sound).

NORROD: OK.

PERIOD OF SILENCE AND TAPE IS CUT OFF

TAPE CUTS BACK ON

NORROD: You mind opening the trunk up?

MORELOCK: You've got the keys because they're not in the car.

NORROD: They're right here in your back pocket, there.

MORELOCK: No, yeah, I mind. You probably need a search warrant to.

NORROD: Not if you give me permission.

MORELOCK: Well ... there's no reason to search ... you know, because you have already searched the car.

NORROD: Pardon me?

MORELOCK: There is no reason to search the car is it?

NORROD: Well, you gave me consent to look up front, you don't want to open the trunk?

MORELOCK: Well, I mean anything that is not ... you know ... locked or anything like that, I'd rather ...

NORROD: You don't want me to look in the trunk?

MORELOCK: Well, I don't have anything in there that I don't want you to see, but I mean its just no [sic] right.

NORROD: Well, I understand that, I understand that, but if you don't want to let us look in the trunk, that's alright, but we are going to go ahead and look up front here. But, I want you to understand something. I'm not trying to put any fear and coercion into you, but right now as soon as I get through searching this car, you're going to be free to go, okay. You're free to go, but I'm going to hold the car until I get a drug dog up here? Okay?

MORELOCK: Oh, that's fine, yeh.

NORROD: If that's the way you want to do it. You know, that's up to you, okay?

MORELOCK: Yeah, that's fine.

NORROD: You want me to get a drug dog?

MORELOCK: Well, whatever, yeh, that's fine.

NORROD: We're going to take a look up front, you stand around in here for these officers.

MORELOCK: Could I get some cigarettes?

NORROD: You stand around in here.

The dog soon arrived; with Norrod and the dog's handler assisting, the dog was permitted to "search" the car. The search resulted in the discovery of over 250 pounds of green plant material in the trunk and rear seat of the car.

Based on the foregoing, the trial court found that the search of the trunk was conducted without probable cause and held

that the seizure of the items from it was therefore unreasonable within the meaning of the Fourth Amendment of the United States Constitution and Article I, Section 7, of the Tennessee Constitution.

## II

We review to determine whether the evidence contained in the record preponderates against the judgment of the trial court, and we must reverse the judgment should the evidence so preponderate.

## III

As a preliminary matter, the State of Tennessee questioned the defendant's "standing." The uncontradicted proof showed that the defendant had permission to drive the car, which had been leased by his brother. The trial court found that the defendant had standing; this ruling was eminently correct. *See State v. Oody*, 823 S.W.2d 554 (Tenn.Crim.App.1991).

Our laws provide that when a law enforcement officer stops a person for a speeding offense, the officer shall issue a traffic citation to such a person in lieu of arrest, continued custody and the taking of the arrested person before a magistrate. T.C.A. § 55–10–207(a)(1). Admittedly, Norrod was justified in stopping Morelock for the traffic violation. However, Norrod could have obtained Morelock's signature on the citation and sent him on his way.

Furthermore, even if Norrod chose not to allow Morelock to resume his journey without a driver's license in his immediate possession, which would itself have been a violation,[1] he could have directed Morelock to lock the car and leave it parked until another person could legally drive it away. Alternatively, should Norrod have concluded that the car constituted a traffic hazard, he could have ordered the car towed. So what we have here is a routine traffic stop prolonged and extended to the point that the detention, reasonable in the beginning, became unreasonable toward the end.

On appeal, the State of Tennessee insists that the search accomplished with the dog's assistance was merely an extension of the initial consent search and valid for that reason. What the state misapprehends, however, is that even were we to assume that the defendant consented to the initial search, the character of his detention had changed in the meantime from reasonable to unreasonable.

On this point we think the case of *State v. Coleman*, 791 S.W.2d 504 (Tenn.Crim.App.1989) is controlling. In *Coleman*, our court invalidated a search which was based on consent obtained during the time the defendant was being unreasonably detained.

Therefore, under *Coleman*, the suppression of the property seized by virtue of this invalid consent was proper. *See also Hughes v. State*, 588 S.W.2d 296 (Tenn.1979); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Thus, because the State of Tennessee has not demonstrated the evidentiary preponderance it asserts, the trial court's judgment must be affirmed.

On a final note, the trial court did not dismiss the indictment, nor has the state suggested that the trial judge's ruling has the substantive effect of dismissal of the indictment as is required by Rule 3(c), Tenn.R.App.P. Such effect is, nevertheless, inferable on the record. Consequently, we have addressed the merits of the issue in the interest of judicial economy. *See* Tenn.R.App.P. 2.

Accordingly, we affirm the judgment of the trial court and dismiss the indictment.

BYERS, P.J., and JONES, J., concur.

---

1. T.C.A. § 55–50–351(a).