# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 16, 2000 Session

## STATE OF TENNESSEE v. ELPIDIO VALDEZ

**Appeal as of Right from the Criminal Court for Davidson County**
**No. 97-D-2152     J. Randall Wyatt, Jr., Judge**

---

### No. M1999-00791-CCA-R3-CD - Filed April 4, 2001

---

On October 9, 1997, a Davidson County Grand Jury indicted Elpidio Valdez, the Defendant and Appellant, for possession with intent to deliver 300 grams or more of cocaine. The Defendant moved to suppress the cocaine, but the trial court denied the Defendant's motion. Following a subsequent jury trial, the Defendant was convicted and sentenced to fourteen years as a mitigated offender. On appeal, the Defendant claims (1) that the trial court erroneously denied the Defendant's suppression motion, and (2) that the trial court erroneously denied the Defendant's motion for a judgment of acquittal. Because we find the circumstantial evidence in this case insufficient to sustain the jury's verdict, we reverse the judgment of the trial court and dismiss the indictment against the defendant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed and Dismissed.**

JERRY SMITH, J., delivered the opinion of the court, in which L. T. LAFFERTY, SR. J., joined. JOE G. RILEY, J. filed a dissenting opinion.

Richard McGee, Nashville, Tennessee, for the appellant, Elpidio Valdez.

Paul G. Summers, Attorney General & Reporter; Todd R. Kelley, Assistant Attorney General; Victor S. Johnson, District Attorney General and John Zimmerman, Assistant District Attorney for the appellee, State of Tennessee.

## OPINION

### Factual Background

In July of 1997, Metropolitan Nashville Police Officer Mike Garbo stopped a Nissan Maxima for speeding on Interstate 40. Reyes Castro was the driver of the car, and the Defendant was a passenger. Officer Garbo asked Mr. Castro to accompany him to the police car so that he (Officer Garbo) could issue a warning citation. Mr. Castro then sat in the back of the police car. While writing the citation, Officer Garbo called a K-9 unit to the scene. Officer Garbo then began asking

Mr. Castro questions. He asked Mr. Castro where he and his passenger were going, what the passenger's name was, and whether they were friends. Mr. Castro replied that they were cousins who were driving from Guadalajara, Mexico to Alexandria, Virginia and that they had been traveling for approximately three weeks. Mr. Castro also told Officer Garbo that the Defendant's name was Portfilio. Officer Garbo told Mr. Castro to wait in the police car while he went to Mr. Castro's vehicle to retrieve the registration. When Officer Garbo went to Mr. Castro's vehicle, he spoke to the Defendant, who was still sitting in the passenger seat. Officer Garbo explained to the Defendant that he had stopped Mr. Castro for speeding, and he asked the Defendant the same questions that he had asked Mr. Castro. The Defendant told the officer that he and Castro were friends and that they had been traveling from Guadalajara to Alexandria for about two weeks. The Defendant gave Officer Garbo proof of insurance and registration which indicated that Mr. Castro owned the vehicle, and Officer Garbo returned to his police car to continue writing the warning citation. While Mr. Castro was in the police vehicle, Officer Garbo ran a criminal background check on Mr. Castro, but found that Mr. Castro had no criminal history. Officer Garbo then issued the warning citation and told Mr. Castro that he was free to go.

However, after Mr. Castro exited the vehicle, Officer Garbo asked, "can I ask you a question?" Mr. Castro replied, "no." Officer Garbo said "I can't ask you a question?" and Mr. Castro indicated that he did not understand. Officer Garbo then told him that drugs and other illegal contraband had become a major problem in the area and that people often transported contraband in cars. Mr. Castro asked Officer Garbo if he wanted to look in the car, and Officer Garbo replied that he did. Officer Garbo then gave Mr. Castro a Spanish language consent form to read and sign, and Mr. Castro did so. Officer Garbo then went to the vehicle and informed the Defendant that he was free to leave. He then asked the Defendant for permission to search the car, and the Defendant gave his permission.

At some point, the K-9 unit arrived, and the dog was led inside and around the car. The dog never indicated that it smelled drugs. Officer Garbo continued to search, however. He noticed several air fresheners that made him suspicious, because based on his experience, Officer Garbo knew that people who transport drugs often carry air fresheners. Then, Officer Garbo noticed that the back seat of the car was loose. He removed the back seat and noticed some scratches on several screws under the back seat. The screws secured the fuel-sending unit, which was located on top of the fuel pump. As Officer Garbo began searching the back of the car, the Defendant and Mr. Castro began speaking Spanish "excitedly" to each other. Officer Garbo then removed the fuel-sending unit and saw that the fuel pump also had scratched screws; so he removed the fuel pump. After removing the fuel pump, Officer Garbo was able to see inside the gas tank itself, and he noticed a package floating in the gas. He removed and cut open the package and discovered what was later determined to be 490.4 grams of cocaine. Sergeant Christopher Taylor, who assisted Officer Garbo in searching the car, testified that when the officers discovered the cocaine, the Defendant and Mr. Castro expressed resignation rather than surprise. After field-testing the substance and determining that it was probably cocaine, Officer Garbo arrested Mr. Castro and the Defendant. A subsequent search of the Defendant revealed that the Defendant was carrying $514.00 in cash. Officer Garbo also searched Mr. Castro, but Mr. Castro was not carrying any money. This was also suspicious to Officer Garbo, because, again based on his experience, he knew that drug dealers often ordered drug couriers to travel in pairs, but would only trust one of the couriers with expense money.

Subsequently, a Davidson County Grand Jury indicted the Defendant and Mr. Castro for possession with intent to deliver 300 grams of cocaine or more.

The Defendant and Mr. Castro moved to suppress the cocaine. Following a suppression hearing, the trial court held that the Defendant lacked "standing" to contest the search because he had no possessory interest in the vehicle. Because the Defendant lacked standing, the court also held that it need not consider whether the Defendant gave his consent to search the car. Finally, the court held that Officer Garbo had probable cause to arrest the Defendant.

Subsequently, the court severed the Defendants' trials; thus, the Defendant was tried alone.[1] Following a jury trial, the Defendant was convicted of possession with intent to deliver over 300 grams of cocaine.

## Motion to Suppress
### A.

First, the Defendant claims that the trial court erred by failing to suppress the cocaine, because it was the fruit of an illegal search in violation of the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution.[2] We disagree. One who challenges the reasonableness of a search or seizure has the initial burden of establishing a legitimate expectation of privacy in the place or thing to be searched. State v. Oody, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991).[3] There are seven factors to be considered when determining if a legitimate expectation of privacy exists: (1) ownership of the property, (2) whether the defendant has a possessory interest in the thing seized, (3) whether the defendant has a possessory interest in the place searched, (4) whether the defendant has a right to exclude others from that place, (5) whether he has exhibited a subjective expectation that the place would remain free from intrusion by the state, (6) whether the defendant took normal precautions to maintain his privacy, and (7) whether he was legitimately on the premises. Oody, 823 S.W.2d at 560.

After analyzing these factors, we find that the Defendant did not carry his burden. Although the Defendant was "legitimately on the premises," there is no evidence that the Defendant subjectively expected privacy or had a possessory interest in the car, much less the gas tank. Indeed, the trial testimony revealed that Mr. Castro owned the car, and the Defendant was merely a passenger. In short, the Defendant failed to establish that he had a legitimate expectation of privacy in Mr. Castro's gas tank. See Rakas v. Illinois, 439 U.S. 128, 99 S. Ct. 421, 59 L. Ed. 2d 387 (1978); State v. Roberge, 642 S.W.2d 716, 718 (Tenn. 1982); Griffin v. State, 604 S.W.2d 40, 43 (Tenn.

---

[1]Apparently, the trial court severed the Defendants' trials because Mr. Castro defaulted on his bond and was not available for trial.

[2]The Tennessee Supreme Court has noted that generally " 'article I, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment.' " State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Sneed v. State, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968)). Thus, for the purposes of this opinion, we consider the two provisions to be coextensive.

[3]Although the trial court and the parties referred to the Defendant's "standing," the term is a misnomer. "Standing," in this context, merely relates to the substantive Fourth Amendment concept of the Defendant having a reasonable expectation of privacy in the place searched or the items seized. See Rakas v. Illinois, 439 U.S. 128, 132-33, 99 S. Ct. 421, 424-25, 58 L. Ed.2d 387 (1978); State v. Transou, 928 S.W.2d 949, 957 (Tenn. Crim. App. 1996).

1980); State v. Roberts, 755 S.W.2d 833, 837 (Tenn. Crim. App. 1988). Because the Defendant did not carry his burden, we need not consider the scope of the Defendant's consent.

### B.

However, the Defendant need not establish a legitimate expectation of privacy to challenge the seizure of his own person. United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S. Ct. 2574, 2578, 45 L. Ed. 2d 607 (1975). Here, the Defendant argues that this "routine traffic stop" was "prolonged and extended to the point that the detention, reasonable in the beginning, became unreasonable toward the end." State v. Morelock, 851 S.W.2d 838, 840 (Tenn. Crim. App. 1992). We disagree.

When the State seeks to introduce in a criminal trial evidence obtained as a result of a warrantless stop of an automobile, the State must demonstrate by a preponderance of the evidence that the stop was based on an exception to the warrant requirement. State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998). This burden may be carried by demonstrating that police stopped the automobile based on reasonable suspicion or probable cause that a traffic violation occurred. State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997). In this case, it is undisputed that Officer Garbo stopped Mr. Castro's car for speeding; thus the Defendant was not improperly seized. Furthermore, nothing in the record suggests that Officer Garbo detained Mr. Castro or the Defendant longer than necessary to issue the warning citation before he ended the stop by returning Mr. Castro's license and telling Mr. Castro and the Defendant that they were each free to leave.

The Defendant contends that any further detention was unreasonable and that any consent to search should have been deemed invalid as a fruit of that detention. However, this Court has previously held that, following the termination of a stop, a police officer's inquiry concerning the presence of contraband in a motorist's vehicle and a request for consent to search the vehicle will not suffice to establish a seizure. State v. Ashworth, 3 S.W.3d 25, 29-30 (Tenn. Crim. App. 1999) (citations omitted); see also State v. Roger D. McCrary, No. M1999-00001-CCA-R9-CD, 2000 WL 641151, at *5 (Tenn. Crim. App. at Nashville, May 19, 2000). Because the record in this case reflects nothing more, we must conclude that Officer Garbo's request to search the car occurred in the context of a consensual encounter, requiring neither reasonable suspicion nor probable cause to believe that the appellees were engaged in criminal activity. Thus, the Defendant's consent was not the result of an illegal seizure.

### Sufficiency of the Evidence

Next, the Defendant claims that the trial court erred by denying his motion for a judgment of acquittal. A motion for a judgment of acquittal is a challenge to the sufficiency of the State's evidence of a defendant's guilt. Tenn. R. Crim. P. 29(a). When the sufficiency of the evidence is challenged, "the standard for review by an appellate court is whether, after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); see also Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979);

Tenn. R. App. P. 13(e).  On appeal, the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  This Court does not re-weigh the evidence, id., or substitute its inferences for those drawn by the trier of fact.  Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956).

In order to convict the Defendant, the State was required to prove beyond a reasonable doubt that the Defendant (a) knowingly possessed cocaine, (b) with the intent to deliver, and (c) the amount of cocaine possessed was 300 grams or more.  Tenn. Code Ann. §§ 39-17-417(a)(4) and (j)(5).  The State unquestionably proved beyond a reasonable doubt that the substance found in the vehicle was cocaine and that the weight of the cocaine exceeded 300 grams.  Thus, the remaining question is whether the Defendant knowingly possessed the cocaine with the intent to deliver it.

A conviction for possession of cocaine may be based upon either actual or constructive possession.  State v. Brown, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987).  As the Tennessee Supreme Court has recently reminded us, the determination as to whether one has constructively possessed contraband "depends on one's power and intention to exercise dominion and control over the contraband."  State v. Shaw, No. W1998-00503-SC-R11-CD, slip op. at n.3 (Tenn., filed March 1, 2001). The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs.  Cooper, 736 S.W.2d at 129.  Similarly, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs.  State v. Transou, 928 S.W.2d 949, 956 (Tenn. Crim. App. 1996). Of course, a criminal offense may be established exclusively by circumstantial evidence.  State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995);  However, the evidence must not only be consistent with the guilt of the accused but inconsistent with innocence and must exclude every other reasonable theory or hypothesis except that of guilt.  Tharpe, 726 S.W.2d at 900; Jones, 901 S.W.2d at 396.

In State v. Transou, police executed a search warrant at a residence and discovered cocaine. 928 S.W.2d at 954.  The Appellant, who was in the bathroom when police entered, had just flushed the toilet when the police found him.  Id.  A search of his person revealed, among other things, a pager, around $500.00, and gold jewelry.  Id.  This Court noted that "[a] person could speculate that [the Appellant] had just divested himself of illicit narcotics by flushing the drugs down the commode.  A person can also speculate that [the Appellant] had a legitimate need to flush the commode since the officers did not find a trace of drugs in the bathroom."  Id. at 956.  In other words, this Court reversed the conviction despite the presence of accoutrements of the drug trade – the pager and money – because the circumstantial evidence did not exclude every other reasonable hypothesis save the guilt of the Appellant.  Id.

Similarly, in this case, one could speculate that the Defendant carried money to finance the trip and was paid by a drug dealer to do so.  However, one could also speculate that the Defendant simply had money and that the driver did not.  Furthermore, the air freshener could signify a desire to deter drug-sniffing dogs or a desire for fresh-smelling air.  Indeed, the air fresheners may have indicated that Mr. Castro, not the Defendant, wanted to deter drug-sniffing dogs.  The only other "evidence" relied on by the State – the Defendant's rapid fire conversation as the search intensified and his look of resignation after the cocaine was found – may have indicated the Defendant's guilt

or may have merely signified the Defendant's surprise that there were drugs in the vehicle along with anger and ultimate acquiescence to the fate almost certain to befall him after police searched Mr. Castro's car and found Mr. Castro's drugs.

Finally, we note that we have previously held that one's possession of contraband may be inferred from his ownership or control over a vehicle in which the contraband is secreted. State v. Brown, 915 S.W.2d 3, 7-8 (Tenn. Crim. App. 1995); see also State v. James A. Jackson, No. M1998-00035-CCA-R3-CD, 2000 WL 549295, at *11 (Tenn. Crim. App. at Nashville, May 5, 2000). In this case, because Mr. Castro was the owner and driver of the car, and because the only evidence of the Defendant's guilt was his money, his ambiguous demeanor, and the air fresheners, we find that there was simply not enough circumstantial evidence to overcome the reasonable hypothesis that Mr. Castro, not the Defendant, had the power and intention to exercise dominion and control over the cocaine.

Accordingly, the judgment of the trial court is REVERSED, and the case is DISMISSED.

_____
JERRY SMITH, JUDGE