IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 1, 2009 Session

## STATE OF TENNESSEE v. HARRY RICHARD

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-00280     Carolyn Wade Blackett, Judge**

**No. W2008-02458-CCA- R3-CD   -   Filed April 13, 2010**

The Defendant-Appellant, Harry Richard, pled guilty in the Criminal Court of Shelby County to driving while under the influence of an intoxicant, a Class A misdemeanor.  He was sentenced to eleven months and twenty-nine days in a county workhouse.  This sentence was suspended, and Richard was ordered to serve eleven months and twenty-eight days on probation.  He was also assessed a six hundred dollar fine and ordered to pay fifteen dollars in other fees.  Richard claims on appeal that the trial court erred in denying his motion to suppress.  Pursuant to Rule 37 of the Tennessee Rules of Criminal Procedure, he reserved the following certified questions of law: (1) "Whether there was reasonable suspicion for a traffic stop for speeding"; (2) "Whether there was probable cause to arrest Harry Richard for DUI"; and (3) "Whether placing Harry Richard in the back of the squad car was a 'brief detention' in this instance."  Upon review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Randall Tolley, Memphis, Tennessee, for the Defendant-Appellant, Harry Richard.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; William L. Gibbons, District Attorney General; and Charles (Bo) W. Bell, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

**Background**.  Richard was indicted for reckless driving and driving while under the influence of an intoxicant.  The charges arose from a traffic stop in Shelby County.  Richard filed a motion to suppress all evidence related to the traffic stop and the subsequent arrest. He claimed the officer lacked reasonable suspicion to initiate the stop and probable cause to support the arrest.

**Motion to Suppress Hearing**.  Officer Keyon Love of the Memphis Police Department testified that he was conducting stationary radar on the evening of February 18, 2007. Just before 8:00 p.m., he clocked Richard's vehicle traveling forty-five miles per hour. Richard's vehicle was heading southbound on Bellevue Boulevard.  Officer Love said the speed limit on Bellevue Boulevard was twenty-five miles per hour.  He tried to initiate a traffic stop, but Richard did not immediately pull over.  Officer Love said Richard "had turned westbound on North Parkway and about a mile down the road is when he actually pulled over for me." Officer Love said Richard "pulled to the left side of the curb, near the median, in the middle of the street." Officer Love approached Richard's vehicle with the intent of asking Richard for his driver's license.  Upon approach, Richard rolled his window down and began talking.  Richard said that he had been at his brother's house where he consumed "a couple of drinks."  Officer Love noticed that Richard had bloodshot, watery eyes and slurred speech. Officer Love suspected that Richard was intoxicated, so he directed Richard to step out of his vehicle.  Officer Love stated:

> [Richard] needed assistance from the car.  He had braced himself up against the car.  He nearly fell in the roadway.  So I went ahead and ushered him on back to my car and had him have a seat in the backseat.

Officer Love testified that Richard "was definitely unsteady with his walk when he initially got out of his vehicle." Richard was not handcuffed.  Officer Love stated that while in the police vehicle, Richard "was detained and not free to leave." Once Richard was placed in the police vehicle, Officer Love contacted the DUI unit.  Officer Love did not conduct any field sobriety tests during the investigative stop.

On cross-examination, Officer Love said he clocked Richard speeding at the intersection of Bellevue Boulevard  and Tutwiler Avenue.  Officer Love's vehicle was located on Faxon Avenue, which runs perpendicular to Bellevue and parallel to Tutwiler Avenue.  Tutwiler Avenue is located to the north of Faxon Avenue.  Officer Love said his vehicle was parked to the west of Bellevue Boulevard, facing east. Officer Love was shown a picture at the hearing.  The picture was taken from Faxon Avene looking north towards the intersection of Bellevue Boulevard and Tutwiler Avenue.  Officer Love acknowledged that there were some trees and growth at the corner of Bellevue Boulevard  and Faxon Avenue; however, Officer Love said his vehicle was parked "on the other side," thereby allowing him to view the intersection of Bellevue Boulevard  and Tutwiler Avenue.

Officer Love believed there was a speed limit sign on Bellevue Boulevard to the north of Jackson Avenue. Jackson Avenue runs perpendicular to Bellevue Boulevard and parallel with Tutwiler Avenue. It is located to the north of Tutwiler Avenue. Officer Love said when he first saw Richard's vehicle, he was already on Bellevue Boulevard south of Jackson Avenue.  Officer Love did not know whether Richard drove past a speed limit sign on

Bellevue Boulevard. Officer Love was shown two pictures taken from Faxon Avenue, each showing the north and south perspective of Bellevue Boulevard. Officer Love did not see a speed limit sign in either picture. Officer Love believed he followed Richard on Bellevue Boulevard for a mile before Richard pulled over; however, he would not be surprised if the distance was only a half-mile.

The defense called Richard as its only witness. Richard testified that while driving southbound on Bellevue Boulevard, he did not see a speed limit sign. He said Officer Love placed him in the back of the police vehicle within a few minutes of being pulled over. Richard did not believe he was speeding.

On cross-examination, Richard testified that he was traveling about thirty-five miles per hour on Bellevue Boulevard before he was stopped. Richard acknowledged that he was traveling ten miles per hour over the posted speed limit if the speed limit was twenty-five miles per hour. Richard said the speed limit on Bellevue Boulevard was thirty-five miles per hour. Richard explained that he traveled on Bellevue Boulevard "all the time," and there was a speed limit sign:

> [O]n the right side of the street, just before you get to Faxon [Avene], right off of North Parkway, if you're going south. But, it's not posted going south, it's posted going north, in that area.

Richard denied telling Officer Love that he had been at his brother's house having drinks. Richard testified that after being placed in the police vehicle, he told Officer Love that he consumed some drinks earlier in the day. Richard said he had three or four drinks at around noon or 1:00 p.m. at a friend's residence. He disclosed this to Officer Love "[b]ecause [Officer Love] insisted that I was drunk and I told him that I wasn't drunk." Richard stated that when he got out of his vehicle, his feet "slipped off the curb." He explained that his vehicle was parked on the curb. In walking to the police vehicle, Richard denied receiving assistance from Officer Love. He also denied that his eyes were glassy and watery.

The record includes the transcript from the preliminary hearing. Officer Daniel Banks III of the Memphis Police Department testified that he responded to Officer Love's call for a DUI technician. Officer Banks said when he first encountered Richard, he noticed a "strong odor of intoxicant." Officer Banks had Richard perform several sobriety tests including a heel-to-toe walk and a one-legged stand. Officer Banks testified that Richard struggled to perform these tests as instructed. Richard attempted to take a breath test to measure his blood alcohol level; however, the machine was not functioning properly. Officer Banks concluded that Richard was under the influence of an intoxicant.

Following the suppression hearing, the trial court issued an order denying Richard's motion. The order stated:

> In this case, there is no doubt that Officer Love had gathered enough information to overcome the hurdle of reasonable suspicion in order to initiate a lawful stop of the Defendant's vehicle. Officer Love testified that he was "running radar" at the corner of Bellevue Boulevard and Faxon Avenue when he "clocked" the Defendant at forty-five miles per hour in a twenty[-]five mile per hour zone. Officer Love's observation of his radar gun gave him reasonable suspicion to believe that the Defendant had committed a violation of a Tennessee driving statute; therefore, the February 18, 2007 stop was lawful.
>
> The Defendant argues that Officer Love did not have reasonable suspicion to detain him after the initial stop. Officer Love testified that when he stopped the Defendant for speeding, he noticed that the Defendant had bloodshot eyes and that his speech was slurred. Both Officer Love and the Defendant testified that the Defendant told Officer Love that he had a few drinks that day. Tennessee courts have held that while these observations would not give an officer probable cause to arrest a defendant for DUI, they are enough to establish the right of an officer to briefly detain the defendant at the scene and administer field sobriety tests or otherwise ascertain the defendant's state of sobriety. *See* State v. Yeargan, 958 S.W.2d 626, 633 (Tenn. 1997). In this case, Officer Love detained the Defendant in the back of his squad car until the DUI unit could get to the scene to perform sobriety tests. Based on Officer Love's prior observations, his detention of the Defendant was lawful, and the Defendant's argument is without merit.
>
> Probable Cause to Arrest
>
> The Defendant argues that Memphis police officers did not have the requisite probable cause to arrest him. An officer may, without a warrant, arrest a person if the officer has probable cause to believe that the person arrested has committed a public offense. TENN. CODE ANN. § 40-7-103(a)(1) (2008). Probable cause depends on whether the facts and circumstances and reliable information known to the officer at the time of arrest were sufficient to warrant a prudent person in believing that the individual had committed or was committing an offense. State v. Lawrence, 154 S.W.3d 71, 76 (Tenn. 2005).

Officer Love had probable cause to arrest the Defendant on February 18, 2007. Officer Love noticed that the Defendant had bloodshot, watery eyes during the initial stop. The Defendant admitted that he had a few drinks that day. When Officer Love asked the Defendant to step out of his vehicle, the Defendant stumbled. Based on these observations, Officer Love detained the Defendant in his squad car and called a DUI officer to the scene to perform field sobriety test. During the preliminary hearing, Officer Love testified that he did not formally arrest the Defendant until after a DUI officer administered several field sobriety tests and determined that the Defendant was intoxicated.

All of these circumstances were sufficient to warrant a prudent person in believing that Defendant was driving while intoxicated; therefore, Officer Love had probable cause to arrest Defendant, and any evidence obtained pursuant to the lawful arrest is not subject to suppression.

After the denial of the motion to suppress, Richard pled guilty to driving while under the influence of an intoxicant. Pursuant to Rule 37 of the Tennessee Rules of Criminal Procedure, he properly reserved the following certified questions of law: (1) "Whether there was reasonable suspicion for a traffic stop for speeding"; (2) "Whether there was probable cause to arrest Harry Richard for DUI"; and (3) "Whether placing Harry Richard in the back of the squad car was a 'brief detention' in this instance."

## ANALYSIS

**Standard of Review**. The standard of review applicable to suppression issues involves a mixed question of law and fact. State v. Garcia, 123 S.W.3d 335, 342 (Tenn. 2003). "[A] trial court's finding of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Cox, 171 S.W.3d 174, 178 (Tenn. 2005) (quoting State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). The Tennessee Supreme Court explained this standard in State v. Odom:

Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld.

Odom, 928 S.W.2d at 23. The trial court's application of the law to the facts is reviewed de novo. State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

**I. Investigatory Stop of Vehicle**.  Richard claims Officer Love lacked a reasonable suspicion to stop him for speeding.  He asserts the evidence did not show that the speed limit on Bellevue Boulevard was twenty-five miles per hour; therefore, Officer Love was not justified in stopping Richard.  The State relies upon the testimony of Officer Love and Richard as proof that Richard was traveling over the speed limit.  The State argues that the speeding violation provided Officer Love with reasonable suspicion to stop Richard.  Upon review, we agree with the State.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures.  The stop of a vehicle and the detention of its occupants constitutes a seizure within the meaning of both the Fourth Amendment to the United States and article I, section 7 of the Tennessee Constitution.  Whren v. United States, 517 U.S. 806, 809-10, 116 S. Ct. 1769, 1772 (1996); State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000).

A warrantless search or seizure "is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement."  State v. Yeargan, 958 S.W.2d 626, 629 (Tenn.1997).  A warrant is not required for an investigatory stop if the officer has "a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed."  State v. Bridges, 963 S.W.2d 487, 492 (Tenn. 1997) (citing Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968)).  Probable cause is not required for an investigatory stop.  State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989) (citing Terry, 391 U.S. at 27, 88 S. Ct. at 1883 and Hughes v. State, 588 S.W.2d 296, 305 (Tenn. 1979)).

The Tennessee Supreme Court has stated that a "[r]easonable suspicion is a less demanding standard than probable cause."  Bridges, 963 S.W.2d at 492 (quoting Alabama v. White, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990)).  Reasonable suspicion for an investigatory stop will be found to exist only when the events which preceded the stop would cause an objectively reasonable police officer to suspect criminal activity on the part of the individual stopped.  State v. Levitt, 73 S.W.3d 159, 172 (Tenn. Crim. App. 2001); State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).  The likelihood of criminal activity required for reasonable suspicion is not as great as that required for probable cause, and is "considerably less" than would be needed to satisfy a preponderance of the evidence standard.  United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989); see also State v. Keith, 978 S.W.2d 861, 867 (Tenn. 1998).

As stated by the Tennessee Supreme Court, "[T]he stop of an automobile is constitutionally reasonable, under both the state and federal constitutions, if the police have

probable cause or reasonable suspicion to believe that a traffic violation has occurred." State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997). Therefore, the sole issue is whether the evidence preponderates against the trial court's finding that Richard was speeding. In the order denying the motion to suppress, the trial court credited Officer Love's testimony that Richard was traveling forty-five miles per hour in a twenty-five miles per hour speed zone.

Officer Love was asked at the motion to suppress hearing what the speed limit was at Bellevue Boulevard and Tutwiler Avenue. He responded, "Twenty-five miles per hour, if I remember correct." Officer Love was later asked how he knew the speed limit was twenty-five miles per hour. He responded, "I believe that that's the posted speed limit sign on Bellevue." Officer Love said he thought there was a speed limit sign on Bellevue Boulevard that was north of Tutwiler Avenue near Jackson Avenue. The defense showed Officer Love two pictures from Faxon Avenue, one facing south down Bellevue Boulevard and the other facing north up Bellevue Boulevard. Officer Love did not see speed limit signs in either picture. Richard provided the only other testimony regarding the speed limit at Bellevue Boulevard and Tutwiler Avenue. Richard said he traveled on Bellevue Boulevard "all the time," and that the speed limit was thirty-five miles per hour. Richard testified that there was a speed limit sign on Bellevue Boulevard heading north near Faxon Avenue.

Based on the record, the evidence does not preponderate against the trial court's finding that Richard was speeding. Officer Love testified that using radar, he clocked Richard traveling forty-five miles per hour. The trial court found that this testimony was credible, and we will not override that determination. Odom, 928 S.W.2d at 23. Richard testified that he believed the speed limit was thirty-five miles per hour. Regardless of Richard's limited proof of photographs showing that there was not a speed limit sign posted in the near vicinity of Bellevue Boulevard and Faxon Avenue, we cannot conclude the evidence preponderates against the finding of the trial court. The record shows that Officer Love had a reasonable suspicion to stop Richard for speeding. Therefore, Richard is not entitled to relief on this issue.

**II. Arrest**. Richard's final two certified questions will be addressed together because they are predicated on a common argument. Richard contends he was arrested once Officer Love placed him in the back of the police vehicle. Because no sobriety tests had been performed at that point, Richard argues Officer Love lacked probable cause to arrest him. The State claims the trial court did not err in finding that Officer Banks had reasonable suspicion to briefly detain Richard in the police vehicle and probable cause to arrest Richard following the sobriety tests. Alternatively, the State contends that Officer Banks had probable cause to arrest Richard even before the arrival of Officer Banks.

An arrest is lawful when an officer has "probable cause to believe the person to be arrested has committed [a] crime." State v. Lewis, 36 S.W.3d 88, 98 (Tenn. Crim. App.

2000). An officer has probable cause if the facts and circumstances known to the officer are "sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." State v. Day, 263 S.W.3d 891, 902 (Tenn. 2008) (citing Brinegar v. United States, 338 U.S. 160, 175-76, 69 S. Ct. 1302 (1949)) (internal quotations omitted). "This determination depends upon 'whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" Id. (quoting Goines v. State, 572 S.W.2d 644, 647 (Tenn. 1978) and quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223 (1964)).

Here, the trial court found that Officer Love had a probable cause to arrest Richard after the completion of the sobriety tests. This finding is supported by the record. At the preliminary hearing, Officer Banks testified that Richard performed poorly on several sobriety tests. Officer Banks also said Richard had "a strong odor of intoxicant." Officer Banks concluded that Richard was intoxicated. At the motion to suppress hearing, Officer Love testified that Richard had bloodshot eyes, slurred speech, and admitted to previously consuming a couple of drinks. Having ordered Richard to step out of his vehicle, Officer Love stated, "[Richard] needed assistance from the car. He had braced himself up against the car. He nearly fell in the roadway." Richard testified that he had three or four drinks, albeit considerably earlier in the day. Based on the foregoing, Officer Love had probable cause to arrest Richard after Officer Banks concluded Richard was intoxicated.

At issue is whether Richard was arrested before he performed the sobriety tests. The trial court found that Richard was merely detained in the police vehicle before Officer Banks arrived. At the suppression hearing, Officer Love testified that he suspected that Richard was intoxicated; therefore, he placed Richard in the police vehicle and contacted the DUI unit. Richard remained in the police vehicle until Officer Banks arrived. Officer Love testified that Richard was detained in the police vehicle and not free to leave.

We believe the present case is comparable to this court's decision in State v. David L. Groom, No. M2002-00798-CCA-R3-CD, 2003 WL 1563667 (Tenn. Crim. App., at Nashville, Mar. 27, 2003). There, an officer responded to a car accident involving the defendant. Id. at *1. The officer smelled the odor of alcohol on the defendant. The officer radioed the dispatcher to report the accident and requested the presence of an investigating officer. The officer instructed the defendant to remain at the scene of the accident. The officer then directed the traffic caused by the accident. He did not conduct any sobriety tests. The investigating officer arrived within thirty minutes. Id. at *2. He noticed that the defendant had bloodshot eyes, slurred speech, and struggled to maintain his balance. The investigating officer thought the defendant was intoxicated, so he ordered the defendant to sit in the back of the patrol vehicle while he obtained information from others involved in

the accident. When the investigating officer returned, the defendant admitted to having a few beers earlier that night. The defendant then performed sobriety tests, which he failed. The defendant also failed a breath test. Id. at *2.

In David L. Groom, this court determined that the defendant was not arrested until after he took the sobriety tests. Id. at *4. The court stated that when the original officer first encountered the defendant and smelled the alcohol, he had the right to briefly detain the defendant to determine his state of sobriety. The court concluded that the thirty-minute detention was not unreasonable because "the officer diligently pursued a means of investigating his suspicions regarding the defendant's intoxication." Id. The court also stated that once the investigating officer smelled alcohol on the defendant, "the [investigating] officer had appropriate reasonable suspicion to detain the defendant for field sobriety tests." The court concluded that after the defendant performed poorly on the tests, the investigating officer had probable cause for the arrest. Id.

As addressed above, the investigatory stop was initially justified by the speeding violation. Like the officer in David L. Groom, Officer Love suspected that the defendant was intoxicated. His suspicion was reasonable based on his observations that Richard's eyes were bloodshot and watery, his speech was slurred, he struggled to maintain balance, and he admitted to having a couple of drinks. Based on this reasonable suspicion, Officer Love was permitted to briefly detain Richard in order to determine his state of sobriety. See id.; State v. Jashua Shannon Sides, No. E2000-01422-CCA-R3-CD, 2001 WL 523375, at *3 (Tenn. Crim. App., at Knoxville, May 16, 2001) (Officer's statement that he detected the odor of alcohol on the defendant "did sufficiently establish the right of the officer to briefly detain the defendant at the scene and administer field sobriety tests or otherwise ascertain defendant's state of sobriety.") (citing State v. Yeargan, 958 S.W.2d 626, 633 (Tenn.1997)); State v. Gregory L. Anderson, No. M2002-02289-CCA-R3-CD, 2003 WL 22490192, at *3 (Tenn. Crim. App., at Nashville, Oct. 31, 2003).

Thus, the remaining issue is whether the detention was reasonable. If "the time, manner or scope of the investigation exceeds" the ambit of reasonableness, a constitutionally permissible stop may be transformed into one which violates the Fourth Amendment and article 1, section 7 of the Tennessee Constitution. United States v. Childs, 256 F.3d 559, 564 (7th Cir. 2001); see also State v. Morelock, 851 S.W.2d 838, 840 (Tenn. Crim. App. 1992); State v. Kevon Fly, No. E2006-01979-CCA-R3-CD, 2007 WL 2141543, at *5 (Tenn. Crim. App., at Knoxville, July 26, 2007). Richard's detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983). "[T]he proper inquiry is whether during the detention, the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." State v. Simpson, 968 S.W.2d 776, 783 (Tenn. 1998).

Here, the record shows that Officer Love approached Richard's vehicle to address the speeding violation. Upon suspecting that Richard was intoxicated, he asked Richard to step out of his vehicle. When Richard struggled to maintain balance, Officer Love placed Richard in the back of his police vehicle and contacted the DUI unit. When Officer Banks arrived, he had Richard perform the sobriety tests. Based on the evidence presented, both officers were diligent in determining whether Richard was intoxicated. Nothing in the record preponderates otherwise. Therefore, we conclude that Richard's detention was reasonable.

The evidence does not preponderate against the trial court's findings that Officer Love had reasonable suspicion to detain Richard in the police vehicle and probable cause to arrest Richard after the sobriety tests were completed. Accordingly, Richard is not entitled to relief on his final two certified questions.

**Conclusion**.  Based on the foregoing, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE