FILED

04/16/2020

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 14, 2020 Session

## STATE OF TENNESSEE v. NICHOLAS RYAN FLOOD

**Appeal from the Criminal Court for Putnam County**
**No. 2017-CR-489    David A. Patterson, Judge**

_____

### No. M2019-00525-CCA-R3-CD

_____

A Putnam County grand jury indicted the defendant for possession of a Schedule II controlled substance with intent to sell or deliver, possession of a Schedule IV controlled substance with intent to sell or deliver, and simple possession of a Schedule II controlled substance.   After trial, a jury convicted the defendant of all counts.   On appeal, the defendant challenges the trial court's denial of his motion to suppress evidence obtained from a warrantless search of his girlfriend's vehicle.   After a thorough review of the record and applicable law, we reverse the judgment of the trial court and dismiss the indictments against the defendant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**

J. ROSS DYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Patrick Timothy McNally, Clifton, Tennessee (on appeal) and R. Luke Chaffin, Cookeville, Tennessee (at trial), for the appellant, Nicholas Ryan Flood.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Bryant Dunaway, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### *Factual and Procedural Background*

On the night of March 18, 2017, Officer Joseph Williams, who was employed by the Tennessee Highway Patrol at the time,[1] stopped the defendant for speeding.   A search

---

[1] At the time of trial, Officer Williams was employed by the Cookeville Police Department.

of the vehicle revealed multiple controlled substances inside a backpack in the trunk. The defendant was arrested and subsequently indicted for possession of over .5 grams of cocaine, a Schedule II controlled substance, with intent to sell or deliver (Count 1), possession of Alprazolam, a Schedule IV controlled substance, with intent to sell or deliver (Count 2), and simple possession of Hydrocodone, a Schedule II controlled substance (Count 3). Tenn. Code Ann. §§ 39-17-417; -418.

## I. Motion to Suppress

Prior to trial, the defendant filed a motion to suppress "all evidence seized" during the traffic stop, asserting that the prolonged detention and subsequent search of the vehicle violated his constitutional right against unreasonable searches and seizures. *See* U.S. Const. amend. IV; Tenn. Const. art. 1, § 7. According to the defendant, Officer Williams stopped him for speeding and intentionally prolonged his detention to conduct a drug investigation after discovering the defendant's decade-old history of drug offenses. Approximately twenty minutes into the stop, a canine unit arrived and alerted at the vehicle. Despite not having a search warrant and having been denied consent, Officer Williams, relying on the alert by the canine unit, searched the vehicle and found drugs in the trunk. Because there was no indication that current drug activity was afoot and the detention went beyond the ordinary time for issuing a speeding citation, the defendant argued the traffic stop exceeded constitutional parameters. Prior to the suppression hearing, the trial court reviewed audio and video footage recorded by Officer Williams's microphone and dash camera during the traffic stop. The following summary is based on that recording as well as Officer Williams's suppression hearing testimony.

On March 18, 2017, Officer Williams stopped the defendant and his girlfriend, Lisa Reitmeyer, on Interstate 40 near Putnam County, Tennessee, for driving 83 miles per hour in a 70 mile per hour speed zone. The defendant was driving Ms. Reitmeyer's vehicle, and Ms. Reitmeyer was in the passenger seat. Officer Williams approached the vehicle and asked the defendant for his driver's license, the vehicle's registration, and proof of insurance. According to Officer Williams, all the documents were valid. Officer Williams returned to his patrol vehicle where he conducted a background check on the defendant. Approximately five minutes into the stop, Officer Williams requested a canine unit after discovering the defendant had multiple felony drug offenses from 2008. However, the Highway Patrol's canine unit was unavailable at the time, so Officer Williams requested a canine unit from the Cookeville Police Department ("CPD"). At about nine minutes into the traffic stop, Officer Williams returned to Ms. Reitmeyer's vehicle, asked the defendant to exit the vehicle, and questioned him about his prior drug offenses. Officer Williams asked for consent to search the vehicle and told the defendant he could consent to the search despite the fact the vehicle was owned by Ms. Reitmeyer. The defendant did not give Officer Williams consent to a search.

2

Officer Williams then asked Ms. Reitmeyer to exit the vehicle and questioned her about the defendant's history of drug offenses. When Officer Williams asked Ms. Reitmeyer if she had any narcotics in the vehicle, she stated she had Adderall in a pill bottle with an expired prescription. She offered to show Officer Williams the bottle, but he declined because the defendant had not consented to a search. Officer Williams did not ask Ms. Reitmeyer for consent to search the vehicle. After questioning Ms. Reitmeyer, Officer Williams told the defendant and Ms. Reitmeyer that a canine unit was on the way and that the prolonged detention was necessary because Ms. Reitmeyer had a controlled substance in the vehicle. When Ms. Reitmeyer again offered to show Officer Williams her medication, he again declined because the defendant did not consent to a search. At approximately sixteen minutes into the stop, Officer Williams returned to his vehicle to being writing the speeding ticket while still waiting on the canine unit.

Approximately twenty minutes into the stop, Officer Matthew Franey of the CPD arrived with a canine. He walked the canine around Ms. Reitmeyer's vehicle until it alerted at the driver's door. Officer Williams began searching the vehicle twenty-five minutes into the stop. When no drugs were found in the passenger compartment, Officer Williams searched the vehicle's trunk. In the trunk he discovered a backpack which contained two bags of controlled substances. Officer Williams arrested the defendant, and Officer Franey continued searching the backpack where he found a third bag containing a controlled substance. The defendant told Officer Williams that the drugs were his and that he intended to sell them because he needed money to pay rent. Officer Williams did not arrest Ms. Reitmeyer.

According to Officer Williams's official notes, he initiated the stop at 9:29 p.m. and the canine unit arrived at 9:47 p.m. Officer Williams stated it typically takes about ten minutes to complete a traffic stop for speeding. He admitted that the defendant's history of drug offenses was his sole reason for prolonging the stop and conducting a drug investigation. He also admitted he did not finish issuing the speeding citation until after the search. After its review, the trial court concluded that: (1) the defendant did not have standing to challenge the search of the vehicle because the vehicle was owned by Ms. Reitmeyer, who was present during the search and had control over the vehicle, and (2) "the time of the stop, the writing of the citation, the calling of the dog and the dog's alert [were] not unreasonably long." Accordingly, the trial court denied the motion to suppress, and the defendant proceeded to trial.

## II.    Trial

At trial, Officer Williams testified consistently with the evidence introduced at the suppression hearing. He also testified he submitted the items seized from the search of the vehicle to the Tennessee Bureau of Investigation ("TBI") crime laboratory for testing. Special Agent Forensic Scientist Laura Cole with the TBI crime lab tested the substances and identified them as 0.88 grams of cocaine, ninety-three yellow Alprazolam

pills, and three Hydrocodone pills. Officer Franey testified he arrived with a canine unit in response to Officer Williams's request. He confirmed that the canine alerted at the driver's door and that a search revealed narcotics in the trunk of Ms. Reitmeyer's vehicle. He also confirmed the defendant admitted he was planning on selling the cocaine and Alprazolam.

The defendant chose not to offer proof at trial. After reviewing all of the evidence, the jury found the defendant guilty of all counts. The trial court imposed a sentence of seventeen years for Count 1, six years for Count 2, and eleven months and twenty-nine days for Count 3, and ordered the defendant to serve his sentences concurrently for an effective sentence of seventeen years in confinement. The defendant filed a motion for new trial which the trial court denied, and this timely appeal followed.

## *Analysis*

### *A. Standing*

On appeal, the defendant challenges the trial court's ruling that he did not have standing to challenge the search because he was not the rightful owner of the vehicle.[2] After a thorough review of the applicable law, we agree with the defendant and conclude that the trial court erred in determining the defendant lacked standing.

Questions of credibility, the weight and value of evidence, and the resolution of conflicting evidence are matters entrusted to the trial judge, so factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). As in all cases on appeal, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000). Appellate courts, however, conduct a de novo review of the application of the law to those facts. *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998).

The Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution guarantee freedom from unreasonable searches and seizures. These guarantees exist to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967); *see State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997). In order to have standing to claim a Fourth Amendment violation, a person must first demonstrate a "legitimate expectation of privacy" in the place searched or the item seized. *State v.*

---

[2] Because the State conceded the trial court erred in denying the motion to suppress, the State does not address whether the defendant had standing to challenge the search.

4

*Oody*, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991) (citing *Rawlings v. Kentucky*, 448 U.S. 98 (1980)).

The trial court stated the following rationale in support of its conclusion that the defendant lacked standing to challenge the search:

> [W]hen the vehicle . . . is owned by another and the registered owner of the vehicle is a passenger during the time of the incident, then the court has found that she has control over the vehicle during the time of the incident and that she is the one that can say what happens with the vehicle, . . .

However, the trial court cited no authority, and our review of the case law demonstrates that the trial court's rationale is misguided. It is well-established that occupants of an automobile other than the owner may challenge the length and nature of a detention during a traffic stop. *See Brendlin v. United States*, 551 U.S. 249, 259 (2007). Tennessee courts have held that a defendant may have a legitimate expectation of privacy even when the property searched belonged to another person. *Oody*, 823 S.W.2d at 560 (citing *State v. Turnbill*, 640 S.W.2d 40, 45 (Tenn. Crim. App. 1982)). Indeed, ownership of the property searched is only one of the seven factors that Tennessee courts consider in determining whether a defendant had a legitimate expectation of privacy. Those factors are: (1) ownership of the property; (2) whether the defendant has a possessory interest in the thing seized; (3) whether the defendant has a possessory interest in the place searched; (4) whether the defendant has a right to exclude others from that place; (5) whether he has exhibited a subjective expectation that the place would remain free from government intrusion; (6) whether the defendant took normal precautions to maintain privacy; and (7) whether the defendant was legitimately on the premises. *Id.* at 560 (citing *United States v. Haydel*, 649 F.2d 1152 (5th Cir. 1981)).

Applying the factors here, we conclude that the defendant had a legitimate expectation of privacy and, therefore, standing to challenge the search. While the defendant was not the owner of the vehicle, he was driving it with Ms. Reitmeyer's permission. The defendant clearly had a possessory interest in the backpack as he claimed ownership of its contents immediately after Officer Williams discovered them. The defendant took normal precautions to maintain privacy and established a right to exclude others from his property by securing his backpack in the trunk and objecting to the search. Objecting to the search also demonstrated the defendant's subjective expectation that his backpack and its contents would remain free from governmental invasion. Therefore, the defendant had standing to challenge the constitutionality of the search, and the trial court erred in its ruling on this issue.

*B. Reasonableness of the Detention*

5

The defendant also argues the evidence should have been suppressed because the length and scope of the investigation exceeded the purpose of the initial stop and were, therefore, unreasonable. The defendant does not contest whether Officer Williams had probable cause to stop him. However, the defendant argues the detention became constitutionally invalid when Officer Williams intentionally prolonged the traffic stop and conducted a drug investigation without reasonable suspicion of drug activity. The State concedes the length of the stop was unreasonable and that the trial court erred in admitting the evidence seized from the search.

The decision to stop a vehicle and detain its occupants is reasonable if the police have probable cause that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). A reasonable traffic stop may become unreasonable and constitutionally invalid "if the time, manner or scope of the investigation exceeds proper parameters." *See State v. Troxell*, 78 S.W.3d 866, 871 (Tenn. 2002). The authority for the roadside seizure ends "when tasks tied to the infraction are--or reasonably should have been--completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Those tasks include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355. While an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop," the officer "may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining the individual." *Id*. Accordingly, police may not prolong a traffic stop in order to conduct a canine sweep unless reasonable suspicion exists. *Id*. at 357.

In addition to the constitutional parameters set out for a routine traffic stop, under Tennessee's "cite and release" statute, when an officer observes certain misdemeanors, such as a speeding offense, the officer shall issue a citation in lieu of arresting the defendant. Tenn. Code Ann. § 55-10-201(a)(1); *State v. Morelock*, 851 S.W.2d 838, 840 (Tenn. Crim. App. 1992). Violating the "cite and release" statute infringes upon a defendant's right against unreasonable searches and seizures. *State v. Walker*, 12 S.W.3d 460, 467 (Tenn. 2000).

The record is clear that the sole justification for the traffic stop was the fact the defendant was speeding. When Officer Williams conducted the usual tasks associated with a traffic stop, he discovered the proof of insurance, registration, and the defendant's driver's license were valid. Therefore, absent reasonable suspicion of other criminal activity, Officer Williams was required to issue a speeding citation and allow the defendant to leave. *Walker*, 12 S.W.3d at 464. However, the investigation changed course after a background check revealed the defendant's history of drug offenses. Officer Williams requested a canine unit, questioned the defendant and Ms. Reitmeyer about the defendant's history of drug offenses, and asked for consent to search the vehicle, which the defendant denied. Because of these additional inquiries, Officer Williams did not begin writing the defendant's speeding citation until approximately

6

sixteen minutes into the stop, and the detention lasted approximately twenty minutes from the time of the initial stop until a canine unit arrived. At the suppression hearing, Officer Williams testified that he typically completes a traffic stop for speeding within ten minutes and admitted that his reason for prolonging the stop was to conduct a drug investigation based on the defendant's history of drug convictions.

On these facts, it is clear that the detention exceeded the time and scope necessary to effectuate a traffic stop for speeding. Additionally, the defendant's history of drug offenses was not sufficient to constitute the reasonable suspicion required to prolong a traffic stop in order to turn a routine traffic stop into a drug investigation. *State v. Joshua Caleb Simmons*, No. M2008-00107-CCA-R3-CD, 2009 WL 2391403, at *6 (Tenn. Crim. App. Aug. 5, 2009) ("[T]he occupants' nervous behavior and prior criminal involvement were insufficient to expand the scope of the initial traffic stop."), *no perm. app. filed*; *see also Joshua v. Dewitt*, 341 F.3d 430, 446 (6th Cir. 2003) (concluding a suspect's past criminal history, "by itself, does not create a reasonable suspicion that criminal activity is *currently* afoot.") (emphasis in original); *United States v. Lee*, 73 F.3d 1034, 1040 (10th Cir. 1996) (concluding the officer did not have reasonable suspicion to turn a traffic stop into a drug investigation based on the defendant's criminal history), *overruled on other grounds by United States v. Holt*, 264 F.3d 1215 (10th Cir. 2001).

Because the canine sweep and subsequent search of the vehicle took place while the defendant was unlawfully detained, the search was constitutionally deficient. *Joshua Caleb Simmons*, 2009 WL 2391403, at *7. Therefore, any evidence seized as a result should have been suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963). Accordingly, the trial court erred in denying the motion to suppress.

### *Conclusion*

Based upon the foregoing authorities and reasoning, we reverse the trial court's denial of the defendant's motion to suppress and dismiss the indictments against the defendant.

_____
J. ROSS DYER, JUDGE

7